Case: 1:22-cv-00259 Document #: 15 Filed: 02/14/22 Page 1 of 22 PageID #:131

1:22-cv-00259 King v. Ford et al.  Judge: Pacold  Magistrate Judge: Finnegan  Illinois Northern District Court



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LaWanda King | ) | |
| | ) | Case Number: 1:22-cv-00259 |
| Plaintiff | ) | |
| | ) | Judge: Pacold |
| v. | ) | |
| | ) | Magistrate Judge: Finnegan |
| Ford Motor Co., et al. | ) | |
| | ) | |
| Defendant (s) | ) | |

**Amended Complaint**

**Section 1**. This is an action for 1) perpetuating employment discrimination including hostile work environment and retaliation 2) disability discrimination 3) breach of contract 4) fraud and 5) compensation discrimination.

Ford violated plaintiffs' rights under the terms, conditions and privileges of employment under the UAW-Ford Collective Bargaining Agreements (CBA) (2019 and prior); and the UAW breached its duty by handling plaintiffs' grievances arbitrarily, in a discriminatory manner and in bad faith. The UAW failed to responsibly protect her interests as a Legacy/Traditional employee under the terms of the CBA and the UAW Constitution.

Plaintiff was subjected to a toxic and hostile work environment at the Ford Chicago Assembly Plant.  Defendants deprived her fair and timely grievance procedures and arbitration processes (2013-2017), reinstated her in June 2017 under false pretenses, denied her contractual right to return to Ohio, denied her reasonable accommodations and compelled her into involuntary retirement in January 2018.

1:22-cv-00259 King v. Ford et al.  Judge: Pacold  Magistrate Judge: Finnegan  Illinois Northern District Court

Defendants' actions, inactions and conduct has been detrimental to plaintiff causing her irrevocable emotional harm with lifelong economic damages. Defendants' actions shortened plaintiffs' career.

Plaintiff filed substantial complaints during the period 2011-2021 and attempted various internal and external remedies to resolve a series of repeated unfair labor practices before proceeding to court again. Plaintiff have experienced undue delays by defendants and their affiliates. Plaintiff have been waiting on responses from her union complaints and appeals processes that are required and/or pre-litigation prerequisites that have been delayed since 2017.  Plaintiff filed complaints during the period 2017-2021. In April 2021, plaintiff received a written response from Scott Eskridge (UAW National Ford Assistant Director) on behalf of all defendants.

Plaintiffs' rights were violated under a Hybrid § 301 of the Labor Management Relations Act (LMRA). Defendants violated plaintiffs' rights under Title VII of the Civil Rights Act of 1964 as amended; the American with Disability Act of 1990 (ADA); the Rehabilitation Act as amended; Age Discrimination in Employment Act (ADEA); Employee Retirement Income Security Act of 1974 (ERISA).

**Section 3.**

The defendant (A) is plaintiffs' employer, Ford Motor Co. (Ford), whose world headquarters street address is One American Road, Wayne County, MI 48216.

Defendant (A) telephone number is: (313)322-3000.

1:22-cv-00259 King v. Ford et al.  Judge: Pacold  Magistrate Judge: Finnegan  Illinois Northern District Court

The defendant (B) is plaintiffs' union, International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (UAW), AFL-CIO ("the UAW" or "the Union"), whose headquarters street address is 8000 East Jefferson, Detroit, Wayne County, MI 48214. Defendant (B) telephone number is: (313)926-5000.

**Section 4.**

The plaintiff was employed by the defendant (A) at the following locations:

Chicago Assembly Plant (CAP), 12600 S. Torrence Ave, Chicago, Cook County, IL 60633 (2010-Current)

Ford Ohio Assembly Plant (OHAP), 650 Miller Rd., Avon Lake, Lorain County, OH 44012 (1992-2010).

**Section 7.1**

(a) The defendant is not a federal governmental agency, and the plaintiff has filed a charge or charges against the defendant(s) asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

(i) the United States Equal Employment Opportunity Commission, on or about August 26, 2019.

(ii) the Illinois Department of Human Rights, on or about August, 26, 2019.

(iii) the U.S. Dept. Of Labor-Office of Contract Compliance, on or about September 27, 2021.

(b) If charges were filed with an agency indicated above, a copy of the charge is attached. Yes. It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to believe that this policy was not followed in this case.

1:22-cv-00259 King v. Ford et al.  Judge: Pacold  Magistrate Judge: Finnegan  Illinois Northern District Court

**Section 9.**

The defendant discriminated against the plaintiff because of the plaintiff's:

(a)  Age (Age Discrimination Employment Act).

(b) Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(c) Disability (Americans with Disabilities Act or Rehabilitation Act)

(e) Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(g) Sex (Title VII of the Civil Rights Act of 1964)


**Section 11.** Jurisdiction over the statutory violation alleged is conferred as follows:

for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3), 42 U.S.C.§2000e-et seq.; for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988 and by Fair Pay Act of 2009, 42 U.S.C. § 2000e-5(e); for the ADA by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791; and for the ADEA, 29 U.S.C. 621 et seq., 29 U.S.C. § 626(d) and 29 U.S.C. § 626(c); for Contract claims by 735 ILCS 5/13-206 and ILCS 5/13-205; by Hybrid section 301 of the LMRA, 29 U.S.C.A. § 185; and by the UAW-Ford Collective Bargaining Agreements (2019 and prior); for Fraud Claims by 735 ILCS 5/13-215 and 735 ILCS 5/13-218 .

**Section 12.** The defendant:

(b) terminated the plaintiff's employment.

(e) failed to reasonably accommodate the plaintiff's disabilities.

(f) failed to stop harassment;

(g) retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

1:22-cv-00259 King v. Ford et al.  Judge: Pacold  Magistrate Judge: Finnegan  Illinois Northern District Court

(h) other (specify): the defendants terminated the plaintiffs employment on April 2, 2013 while on an approved and paid medical leave of absence to failed to reasonably accommodate the plaintiffs disabilities three failed to stop harassment for retaliated against the plaintive because the plaintiff did something to assert her rights protected by the laws identified in paragraph 9H other defendants collectively created and maintained a hostile work environment subjecting plaintive to disparate treatment that included repeated bullying, other abuse of power behavior and retaliated when plaintive took action to prevent, incorrect violations in sex harassment.

**Section 13. The facts supporting the plaintiff's claim of discrimination are as follows:**

HOSTILE WORK ENVIRONMENT AND RETALIATION

1. Plaintiff, LaWanda King was hired at Ford Motor Co. (Ford) on October 5, 1992 at the Ford Ohio Assembly.

2. Plaintiff's race is African-American; her sex is female; her age is and was over 40 when she transferred to the Ford Chicago Assembly Plant (CAP).

3. During the period October 1992 and August 2010; plaintiff was never disobedient, walked off a job, failed to follow instructions from her supervisors or anyone.

4. Plaintiff had zero (-0-) disciplines on her record when she transferred to CAP.

5. Fluretta Drummer, (Labor Relations Supervisor) provided a 30 (b)(6) testimony that confirmed the many differences at CAP and the fact CAP Medical Dept. and Labor Relations Office (LRO) was dysfunctional and deficient in staffing during the period August 2010 through 2014.

6. The continued pattern of employment discrimination happens when an employer, its attorneys, its agents and consulting firms are allowed to willfully misstate facts, conceal evidence and misrepresent the truth. Employees suffer physically, emotionally and economically; while employers and all others are unjustly enriched.

1:22-cv-00259 King v. Ford et al.  Judge: Pacold  Magistrate Judge: Finnegan  Illinois Northern District Court

7. The Chicago Assembly Plant has a demonstrated history of employment discrimination and class-action race and/or sex harassment-based litigations.  Plaintiff experienced a toxic and hostile work environment from August 16, 2010 through January 2018.

8. Plaintiff experienced daily and/or weekly sexual inferences and innuendos, physical altercations, drug and/or alcohol use during work hours and sex-based conduct in vehicles and throughout the plant during her tenure at Chicago Assembly Plant.

9. It was customary at CAP to witness a cursing match between a supervisor and an employee or another employee without any discipline applied. This was considered "shop talk" to most; however, discipline in this regard was applied discriminatorily.

10. Plaintiff filed an internal sexual harassment complaint against her supervisor (Michael Reise) in December 2011; for sexually explicit comments toward her that she perceived to be inappropriate.

11. Plaintiff filed her complaint with Labor Relations Rep (Justina Delangel) in the presence of Union Rep (Reggie Easter) in December 2011.

12. In plaintiffs' prior litigation, there was no evidence of any form of reports submitted in plaintiffs' requested employment records that was received from defendants.

13. Michael Reise was not held accountable and promoted afterwards.

14. But for the defendants' actions to disregard plaintiffs sex harassment complaint against Reise in 2011 and not take immediate action to remove him from that plant; Christie Van (2014 Class Action litigation) would not have been sexually harassed by him in 2012.

15. Many union officials were named as predators in the 2014 sex harassment class action litigations in Chicago. The UAW International Union has been riddled with scandals while some of its International UAW officials were linked to sex harassment allegations themselves. Some of these same union officials were involved with the mishandling plaintiffs' termination grievance.

16. Defendants removed plaintiff from her base job permanently in April 2012 based on her sex, race and in retaliation. Plaintiff was replaced with a younger, white, male.

17. Under Ford's Policies, subject to the provisions governing promotional and non-promotional job transfers, no employee shall be moved indiscriminately (see 2011 CBA, Volume I, Article VIII § 23(a)).

18. Plaintiff regret filing her sex harassment complaint because it ruined and ended her career. But for plaintiff filing her sex harassment complaint in March 2012 with the EEOC; plaintiff would have not have been permanently removed from her job in April 2012.

19. Plaintiff experienced more acts of sex harassments, innuendos and other forms of intimidation and misconduct from co-workers and management after she filed her complaint and Reise was promoted.

20. Defendant's shop floor Superintendent, Tony Giles denied plaintiff a job opportunity even though plaintiff qualified.

21. During the period December 2011 through April 2, 2013, plaintiff was intimidated, threatened, and utilized as surplus, demoted, erroneously disciplined, shorted and/or denied pay for working, denied overtime, employment records were altered, address erroneously changed without her authorization and erroneously denied access to the employee system.

22. Ford expressed a long-stand concern about Sexual Harassment (CBA p. 453) and a procedure that plaintiff followed which was a prompt reporting to immediate management, local union officials, Human Resources office (CBA, p. 454) and other resources (see 2011 CBA, Volume IV-A. p. 453 – 459).

23. Grant Morton, Former Local 551 Chairman, signed a declaration statement implicating threats and discriminatory actions that was made toward plaintiff if she did not drop her complaint against Ford. His statement also demonstrated that plaintiff was discriminatorily removed from

her job, denied a position that she was qualified and moved around to various more difficult job positions prior to her termination. Grant Morton's declaration was a contributing factor in plaintiffs' loss to defendants.

24. Plaintiff was slandered and later identified as "one of the women that filed a sex harassment complaint" during orientation in June 2017.

25. Medical Dept. staff, Labor Relations Representatives and union reps retaliated against plaintiff in a series of malicious acts during the period 2011 through 2018 after she filed complaints internally and externally.

26. In 2017, Plaintiff filed internal complaints and was ignored again to no avail and attempted to file more with the EEOC and ILDHR in September 2017, but was informed EEOC and Ford reached a $10 million settlement. Plaintiff was instructed to utilize the employee claims form process that will be mailed to employees for any and all incidents that happened at Chicago Assembly Plant during the period January 2010 – August 2017. Plaintiff received a right to sue notice in October 2017 that she filed in 2014 and was instructed to include that with her complaint because it was within the designated period. Plaintiff and other employees were denied the details of the settlement upon their request.

27. Plaintiff and other employees received an employee conciliation packet from Rust Consulting Firm (Ford's Claims Administrator) that indicated to return the completed claim forms within 120 days from the date. There was no date on the notice or envelope. Plaintiff and several other employees contacted the EEOC in this regard. Plaintiff included more harassment details and names of union members and management. Plaintiff submitted her claim form along with substantial supporting documents in a timely manner in February 2018.

28. Plaintiff received a response from Rust Consulting Firm in March 2019; which was over a year (365 days) from her submission. Plaintiff was denied any portion of the $10 million settlement

indicating that her claim was not received by the deadline. Again, there were no dates on any of the documents mailed to employees. Employees do not know who was reviewing their confidential documents and/or making award determinations. There was no appeal process. This was an unfair process and nobody is being held accountable. There is no indication that the form was reviewed and approved prior to being mailed to employees. The details of the settlement were not included. Some employees received monetary awards that did not file a claim. Most employees that received an award were younger and lends merit to a targeting mechanism.

29. Plaintiff vehicle began getting vandalized at work and at her home in 2011. After plaintiff filed complaints against the Union in September 2017, she was run off the road that totaled her vehicle and since live in fear.

30. Defendants, through its agents and employees, failed to exercise reasonable care to effectively prevent or correct harassment and a hostile work environment associated with the defendants Chicago Assembly Plant, has unlawfully harassed and discriminated against plaintiff with respect to her compensation, terms, conditions, and privileges of employment, in retaliation and based on her race, African American, sex, female, color, lighter skinned melanin, age, over 40 and disability.

31. Defendants, through its agents and employees, has unlawfully harassed and discriminated against plaintiff in a way which would deprive or tend to deprive her of employment opportunities or otherwise has adversely affected her status as an employee.

BREACH OF CONTRACT

32. Plaintiff was hired full time at Ford Ohio Assembly Plant on October 5, 1992. Plaintiff became a member of UAW Local 2000 on the date of hire.

33. Plaintiff transferred to Ford Chicago Assembly Plant on August 16, 2010. Plaintiff became a member of UAW Local 551 on the date of transfer.

34. These assembly plants are mandatory "union shops" that operate under the UAW-Ford Collective Bargaining Agreements (2019 and prior).

35. Defendants violated the terms of the CBA when they failed to protect plaintiff from known unfair labor practices, unfair disciplines, the countless pay shortages for working and/or failed to pay her the negotiated benefits including wages increases, bonuses, vacation pay.

36. Plaintiff was terminated on April 2, 2013. Local 551 Union Rep. Dave Dahn (Michelle Dahn father) wrote plaintiffs termination grievance (JC143) on April 3, 2013. Local 551 Union Rep. John Cullum provided inaccurate facts to support plaintiffs' grievance. This document was processed from April 2013 through October 2016 with wrong facts.

37. Plaintiff was in litigation with Ford during the period 2013 through 2017. Plaintiffs' grievance procedure was in progression from April 3, 2013 through May 9, 2017. Plaintiff was reinstated under false pretenses that breaches the CBA.

38. If the union representatives had exercised fair and/or reasonable due diligence in their representation of plaintiff, especially as a high seniority employee; they would have discovered enough facts and evidence that would have proved plaintiff was wrongfully terminated.

39. Defendants discriminated against plaintiff based on her age, over 40, race, African American, color, Lighter skinned melanin and her recall rights as it relates to similarly situated employees Christie Van and Michelle Dahn. Plaintiff have a pension and they didn't.

40. Michelle Dahn, a younger, white, female that was terminated in March 2014 after plaintiff (April 2013) for the exact same reason "failure to respond to 5-day notice". Defendants notified her of her hearing and afforded her an outside impartial Arbitrator. Dahn was recalled in 2016 which breaches the contract as it relates to discrimination and recall rights. Ransom protested more

favorably on Dahns behalf and requested to make her whole. Ransom did not protest for plaintiff in the same manner at all. Dahn was reinstated shortly afterward.

41. Christie Van, a younger, darker skinned melanin, African American, female had her grievance heard and was afforded an impartial Arbitrator in 2014 and settled within a few months. Ransom protested more favorably for this employee's grievance as well.  Van was also reassigned to the Chicago Stamping Plant after her incident with Michael Reise. Plaintiff was not afforded this opportunity.

42. A Jury would agree that the union's refusal and failure to process plaintiffs' termination grievance through a timelier progression of steps and failure to advance her grievance to an impartial arbitrator affected the outcome that was more favorable to defendants and more damaging to plaintiff.

43. But for Ford, and its agents' actions that caused plaintiff to be subjected to employment discrimination including termination that breached the terms of the UAW-Ford Collective Bargaining Agreement (CBA); plaintiff would not have been terminated and suffered the extent of harm and damages.

44. But for the union breaching its duty to fairly represent plaintiff in good faith and rather represented her in an arbitrary, discriminatory manner and in bad faith during her grievance and arbitration processes; plaintiff would not have remained terminated for four years and suffered the extent of harm and damages.

Defendants, through its agents and employees, has unlawfully harassed and discriminated against plaintiff with respect to her compensation, terms, conditions, and privileges of employment, in retaliation and based on her race, African American, color, lighter skinned melanin, sex, female, age, over 40 and her disability.

Defendants, through its agents and employees, has unlawfully harassed and discriminated against plaintiff in a way which would deprive or tend to deprive her of employment opportunities or otherwise has adversely affected her status as an employee.

DISABILITY DISCRIMINATION

Disparate treatment

45. Plaintiff is disabled as defined by the ADA. Defendants were aware of plaintiff's disabilities.

46. Plaintiff have a history of disabilities on her employment record with Ford since 1993.

47. Plaintiff was qualified, experienced and successfully performed the essential functions of her job during the period October 1992 – August 2010 at OHAP, with or without a reasonable accommodation.

48. Plaintiff experienced temporary medical restrictions at OHAP during the period 1992-2010; was reasonably accommodated and successfully performed the essential functions of her job.

49. Plaintiff worked as a QLS Group Leader and Driver (Headlight Light Aimer and Roll Tester) within the 10 years prior to transferring to CAP. Plaintiff was a top performer as a headlight aimer when she departed OHAP.

50. Plaintiff was qualified, experienced and able to perform the essential functions of her job, with or without a reasonable accommodation from 1992 - 2018.

51. Plaintiff transferred to CAP and experienced unwarranted discipline due to her disability whereas policies and procedures were different from her previous plant location and/or administered discriminatorily.

52. Defendants were aware of plaintiff's disabilities at the time of her reinstatement.

53. Plaintiff was not assigned back into her former position and/or area as promised or at least with Legacy and/or senior employees.

54. Plaintiff was assigned to a least desirable job operation that would cause her harm.

55. Michelle Dahn, a younger, white female with less seniority than plaintiff and daughter of Union Rep. Dave Dahn was similarly situated and treated more favorably when she was reinstated. She was reinstated and assigned right back to her same job and/or area.

56. Billy Cowart, an African American, Male similarly situated was treated more favorably when he was reinstated. He received one year back pay and reassigned right back to his same job and/or area.

57. Plaintiff reported to work on July 17, 2017 with temporary medical restrictions.

58. Plaintiff was denied a reasonable accommodation to be reassigned and/or available openings at other buildings, or different plant locations from July 17, 2017 through January 2018 due to her disability.

59. Plaintiff was placed on No Work Available on July 17, 2017, September 2017 and December 2017 due to her disability. Plaintiff received a letter from Unicare dated January 2, 2018 indicating plaintiff was selected by an alleged advocate group to apply for SSDI due to her disabilities otherwise her benefits would end.

60. Defendants had other similarly situated employees that were younger (Maria Price) and of a different race and sex (Grant Morton) than plaintiff that was not selected for SSDI. Plaintiff was provided a list of other employees that have restrictions and were reassigned so they are able to keep working. Defendants have a history of retaliation so to protect the employee's plaintiff will disclose to the court.

61. Plaintiff was denied her contractual right to return to her basic work unit (RTBU) in June 2017 through January 2020 due to her disability. Plaintiff was initially told by Labor Rep. Theo Cell and others from June 2017 through January 2018 the reason for denial was there were no openings. OHAP had available openings and was hiring from the streets through 2020. Most hired were younger male employees.

62. In 2021, defendants' reason for their denial was because plaintiff accepted the $30K moving allowance. Majority (99%) employees that relocated to Chicago and other locations took the same package as plaintiff and was afforded the opportunity to return to their basic unit. All of the employees that transferred with plaintiff that opted to leave which was most, and/or many others she knows were either younger or did not have disabilities.

63. Defendants ensured that plaintiff only option was to remain on one job at Chicago Assembly Plant to compel her into involuntary retirement due to her age and disabilities with reduced pension credits, etc. that would be a benefit to Ford. Ransom and Shea could have sent plaintiff back to Ohio in their alleged May 9, 2017 meeting and avoided most of the perpetuated employment discrimination that caused more harm and damage to plaintiff. Both were aware of the hostile work environment and wrongful termination and more.

64. Plaintiff was denied all negotiated wage increases, bonuses and other compensation since 2017 due to her disability.

65. Plaintiff is not an active employee and she not yet retired; but she has been denied the privileges of employment as a Legacy/Traditional employee such as signing bonuses, etc. Plaintiff has the equal privilege to vote and receive an annual taxable income for UAW legal fees.

66. Plaintiff wanted to try re-entering the workforce in January 2020. Her Physician requested a reasonable accommodation of changing her work location from the Chicago Assembly Plant but his request was denied.

67. Defendants, by its agents and employees denied plaintiff the buyout packages due to her disability.

68. Plaintiff had tried unsuccessfully to get a response to her appeal since May 2019 so she can retire. They responded in April 2021.

69. Plaintiff is no longer able to return to work due COVID-19 complications in 2020.

70. Defendant, through its agents and employees, has unlawfully interfered with, restrained, and denied the exercise of or the attempt to exercise, the rights afforded plaintiff under the American with Disabilities Act and Title VII of the Civil Rights Act of 1964 as amended. Defendant has discriminated against plaintiff by depriving her equal wages, compensation and benefits, denied her a reasonable accommodation and/or reassignment to other positions that she was qualified and/or entitled under the collective bargaining agreement.

71. Defendants compelled plaintiff into voluntary retirement due to her disability, age, over 40, race, African- American, color, lighter skinned melanin, sex, female for opposing unfair labor practices, the interference and restraint in denial of her rights afforded under the Americans with disability act of 1990 as amend (ADA) and Title VII of the Civil Rights Act of 1964 as amended.

FRAUD

Fraudulent concealment

72. Ford, through its agents and employees, made numerous false statements of material facts during plaintiffs' previous litigation, grievance/arbitration process as it relates to the integrity of plaintiffs' cause and reason for her termination, FMLA, discipline, attendance and other employment records.

73. Ford, through its agents and employees, misrepresented and omitted material facts during previous litigation related to plaintiffs' employment/attendance records as it relates to her FMLA eligibility.

74. Defendants knew they were providing a false statement when they indicated during hearings that plaintiff was disciplined for 30 days without pay on August 9, 2011 for her attendance records.

75. Ford, through its agents and employees, provided false statements that plaintiff failed to provide a statement for her sex harassment complaint against Michael Reise in 2011.

76. Defendants knew they were providing false statements when they indicated plaintiff was terminated for "failure to respond to 5-day notice".

77. Defendants knew/was aware that plaintiff satisfied her legal and/or contractual obligation to respond to the 5-day notice and in a timely manner.

78. Ford, through its agents and employees, proceeded through court, wasted the courts time and extended plaintiffs suffering when it was discovered on April 2, 2013 that plaintiff did respond to the 5-day notice timely.

79. During a deposition of a Labor Rep in 2014, the question was asked why wasn't plaintiff reinstated after Ford discovered that plaintiff had responded to the notice timely on April 2, 2013?

80. A jury would find that Plaintiff was terminated for "unjust" cause and their actions, inactions and conduct is a breach of the collective bargaining agreement.

81. During the same deposition, it was demonstrated that plaintiffs medical leave of absence was certified and approved on March 26, 2013 for the period March 4, 2013 through April 30, 2013. Additionally, there was other material facts and evidence concealed that demonstrated discrimination and malice as it related to plaintiffs' termination.

82. During plaintiffs Article 33 hearing; it was discovered that material facts and evidence submitted to the UAW International President (Dennis Williams) for the hearing was removed from plaintiffs' documents. Regional Rep. Tony Tallarita and Jody Dunn disregarded plaintiff and made comments in a bad faith stating "just because you gave them all of those documents don't mean you're getting your job back".

83. During an alleged "Pre-Arbitration" meeting on May 9, 2017 between Ford's Rep (Johanna Shea) and the UAW Rep. (Reggie Ransom); they both were aware that plaintiff had responded to the notice timely, concealed material facts and misrepresented when they had a duty to disclose it and ample opportunity to correct the wrong.

84. Ransom concealed meritorious evidence and other supportive documentation in 2017. He and other UAW Representatives omitted supporting evidence that was favorable to plaintiff, surface bargained and protested against her throughout their representation on her behalf.

85. This conduct will demonstrate to a jury that Ransom and other UAW Officials acted in a deceptive, arbitrarily, discriminatory manner and in bad faith.

86. Plaintiff was provided a document on May 18, 2017 indicating that her termination grievance was settled on May 9, 2017.

87. Plaintiff requested to be present after the incident with Jody Dunn. Plaintiff was not notified and denied to be present at what some people call a "sham" pre-arbitration meeting that settled her grievance. Plaintiff informed Ransom that she disagreed with his actions, the biased arbitration process, the agreement that was made on her behalf without her input or presence and felt betrayed again. Ransom told plaintiff "You have no choice or say so on how I settled your grievance". Ransoms' conduct was similar to Jody Dunn conduct in 2015.

88. In 2016, Plaintiff learned the Dunn failed to notify or inform her that he sided with Ford and closed plaintiff's grievance in an arbitrary, discriminatory manner and in bad faith.

89. Ransom misled plaintiff stating that Ford don't pay backpay and hurried plaintiff to take her physical and be reinstated. He assured plaintiff she would get her retroactive pension service credits, full seniority, return to her basic unit in Ohio, full vacation time, benefits etc. as a Legacy/Traditional employee upon her reinstatement.

90. Plaintiff passed her physical on June 5, 2017 and was reinstated on June 19, 2017.

91. Plaintiff returned to work with the first week in orientation. Plaintiff was 1 of approximately 14-15 employees in a group of 3 non-African American new hires and approximately 9 younger rehired-new hires. The younger employees for the most part had been hired from the street since plaintiff was terminated and recruited by UAW Local 551 officials.

92. Plaintiff returned after 4 years and experienced a repeat of her past discrimination and retaliation.

93. Plaintiff was denied the equal benefits of a full seniority employee as indicated on the May 9, 2017 agreement and in the CBA. Plaintiff was denied substantial material benefits that she was promised and awarded.

94. Plaintiff called Ransom and numerous others who all gave her the run around and/or continued to ignore her, refused to write grievances and blew her off.

95. Plaintiff was denied her vacation pay as a Legacy/Traditional employee and instructed to file for unemployment for 2 week shut-down (6/30/17 thru 7/16/17) period by the same Labor Rep. Kathy Fivecoat; who was also involved with plaintiffs' wrongful termination. Plaintiff should have received 80 hours vacation pay plus a floating holiday instead of unemployment/sub pay and no pay.

96. Plaintiff received an inaccurate check for the July 2017 Shutdown period in April 2021. Defendants breached the CBA and their "sham" agreement dated May 9, 2017.

97. Plaintiff discovered in June 2021, the defendants' actions and document dated May 9, 2017 is suspect to misrepresentation. Considering the actions of the defendants' who can plaintiff depend on in the UAW. The UAW National Ford Dept. Representatives (Ransom and Dunn) breach of their duty of fair representation lends merit to potential UAW scandals and weakens the integrity of the mandatory arbitration process.

98. Defendants, through its agents and employees, has unlawfully committed fraud and discriminated against plaintiff with respect to her compensation, terms, conditions, and privileges of employment, in retaliation and based on her race, African American, color, lighter skinned melanin, sex, female, age, over 40 and her disability.

99. Defendants, through its agents and employees, has unlawfully committed fraud and discriminated against plaintiff in a way which would deprive or tend to deprive her of employment opportunities or otherwise has adversely affected her status as an employee.

COMPENSATION DISCRIMINATION

100. Defendants recognize their respective responsibilities under federal and state laws relating to fair employment practices.  They recognize the moral principles involved around civil rights and have reaffirmed in their Collective Bargaining Agreement (CBA) their commitment not to discriminate because of color, age, sex, union activities...or against any employee with disabilities.

101. Plaintiff requested reasonable accommodations which included returning to Ohio, the plant she formed peaceful and harmonious working relations over an 18-year period.  The request was denied.  Had Ford provided this accommodation with or without moving expenses, plaintiff would be actively working today (2022) and or applied and accepted an early retirement offer.

102. There are four levels of hourly employees:

103. Legacy/Traditional- Employees hired or rehired before Nov. 19, 2007

104. Entry Level – Employees hired or rehired after Nov. 19, 2007

105. Long-term Supplemental (LTS) – Employees hired to supplement the workforce for a long-term assignment that is temporary in nature.

106.    Temporary Part-time (TPT) — Employees hired to supplement the workforce who work any two days during the week and all have potential of working additional days for which full-time employees receive premium pay as long as no full-time employee is displaced.

107.    Scott Eskridge stated that plaintiff's hourly rate was $29.84 in 2017. Plaintiff deprivation of her wage increases, reduced credited service credits in addition to the years of lost wages for back pay and future pay that plaintiff's social security and pension is impacted.

108.    Plaintiff received a pay check in 2021 for a 2017 Supplemental Unemployment Benefit (SUB) Plan which is generally for full weeks of layoff of an amount that, when added to state unemployment compensation, equals 74 percent of the employees weekly before-tax pay.

109.    The award Ransom bargained for plaintiff and the economic harm demonstrates compensation discrimination and economic damages that plaintiff have sustained through defendants' oppression and retaliation based on her age and disability. Ford reinstated plaintiff at an hourly rate that was approximately $1.00 less than her peers. Defendants compelled plaintiff into involuntary retirement within weeks of her reinstatement and lends merit to the intent of their actions.

110.    Plaintiff's active coworkers that were not terminated 50 months, received General Wage Increases in 2015 and 2017 of three (3) percent and in 2019 of three (3) percent which totals approximately $2.70 per hour. Four (4) percent lump sum Performance bonuses were paid in 2016, 2018, 2019, and 2021.

111.    Plaintiff lost approximately $247,000 or more in base wages that does not include overtime, benefits and statutory payments.  Ford retained the $247,000 that plaintiff lost.

112.    Between April 2013 through June 2017 employees earned approximately $58.15 per hour or more.  Ford refused plaintiff's total compensation package of approximately $500,000 or more in the four (4) years of her termination period.

1:22-cv-00259 King v. Ford et al.  Judge: Pacold  Magistrate Judge: Finnegan  Illinois Northern District Court

113.    Legacy employee's compensation package was approximately $68 per hour in 2018. Plaintiff was involuntarily placed on "No Work Available" which is a placement or involuntary medical Leave of Absence to long-term disability and SSDI, between 2017 and 2022.  In that six (6) year period, plaintiff was impoverished, and Ford was enriched approximately $848,000 less her award and disability offsets.

114.    Ford offers Inactive employees Vocational Retraining Assistance that are on indefinite layoff.  Plaintiff is denied these benefits due to her disability. The only Vocational Retraining Assistance Ford offer plaintiff status is being discriminated based on her disability and compelled into Long-term disability and social security evaluation or termination of benefits. This was plaintiff only option in January 2018.

115.    Defendants, through its agents and employees, has unlawfully discriminated against plaintiff with respect to her wages, compensation, terms, conditions, and privileges of employment, in retaliation and based on her race, African American, sex, female, color, lighter skinned melanin, age, over 40 and her disability.

116.    Defendants, through its agents and employees, has unlawfully discriminated against plaintiffs' compensation in a way which would deprive or tend to deprive her of employment opportunities or otherwise has adversely affected her status as an employee.

**Section 15.** The plaintiff demands that the case be tried by a jury. Yes

**Section 16.** THEREFORE, the plaintiff asks and pray that the court grant the following relief to the plaintiff:

Direct the defendant Ford to medically retire plaintiff.  Grant the plaintiff appropriate backpay/lost wages including tax offsets, liquidated/double damages, front pay, compensatory

damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including

reasonable attorney and/or legal fees and expert witness fees.

(h) Grant such other relief as the Court may find appropriate.

_____

(Plaintiff's signature)

LaWanda King

20929 Ventura Blvd. Ste.47207

Woodland Hills, CA 91364

(773)575-1799

Date: 02/13/22